**FILED**

MAY 2 0 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ELECTRONIC PRIVACY INFORMATION CENTER**
**1718 Connecticut Ave., N.W.**
**Suite 200**
**Washington, DC 20009**

       **Plaintiff,**

       **v.**

**THE UNITED STATES DEPARTMENT OF**
**HOMELAND SECURITY**
**Washington, D.C. 20528**

       **Defendant.**

Case: 1:11-cv-00945
Assigned To : Jackson, Amy Berman
Assign. Date : 5/20/2011
Description: FOIA/Privacy Act

## COMPLAINT FOR INJUNCTIVE RELIEF

1.     This is an action under the Freedom of Information Act ("FOIA"),

5 U.S.C. § 552 (2011), for injunctive and other appropriate relief, seeking the release of agency

records requested by the Electronic Privacy Information Center from the United States

Department of Homeland Security.

### Jurisdiction and Venue

2.     This Court has subject matter jurisdiction over this action and personal jurisdiction

over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) (2011) and 5 U.S.C. § 552(a)(6)(C)(i) (2011).

This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2011).  Venue is

proper in this district under 5 U.S.C. § 552(a)(4)(B) (2011).

1



**Parties**

3.      Plaintiff Electronic Privacy Information Center ("EPIC") is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C.  EPIC's activities include the review of federal activities and policies to determine their possible impacts on civil liberties and privacy interests.  Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter.  EPIC also maintains a heavily visited Internet site, http://www.epic.org, which contains extensive information regarding privacy issues, including information EPIC has obtained from federal agencies under the FOIA.

4.      Defendant United States Department of Homeland Security ("DHS") is an agency established in the Executive Branch of the United States Government.  DHS is an agency within the meaning of 5 U.S.C. § 552(f)(1) (2011). The Science and Technology Directorate ("S&T") is a component of the DHS.

**Facts**

**The Department of Homeland Security has Spent Millions of Dollars Developing Body Scanner Technology for Use in Surface Transit and on Public Streets**

5.      In 2005, the Transportation Security Administration ("TSA"), a DHS component, began testing body scanner imaging technology to screen air travelers.

6.      Body scanner imaging, which involves either backscatter or millimeter wave technology, produces detailed, three-dimensional images of individuals.

7.      In March 2010, the DHS released a "Surface Transportation Security Priority Assessment," which detailed the agency's plans to conduct risk assessments and implement new body scanner technology in America's surface transportation systems, including "mass transit, highways, freight rail, and pipelines…"

8.      Body scanner devices have previously been tested at surface transportation

stations in both the U.S. and abroad.

9.     In 2006, millimeter wave machines were tested on PATH train riders at a New Jersey train station.

10.     The DHS has acknowledged that both passive and active millimeter wave technology was employed in this setting.

11.     In the summer of 2009, the PATH train system, in conjunction with the Department of Homeland Security, once again tested body scanner technology on PATH travelers.

12.     Manufacturers of body scanner technology have long envisioned its use in subway terminals. Pacific Northwest National Laboratory, the company responsible for the development of the L-3 millimeter wave machine, has promoted the technology as providing "a new level of safety and security to public arenas, such as airports and subway terminals…"

13.     Recent news stories have reported the deployment of mobile body scanner technology in vans that are able to scan other vehicles while driving down public roadways.

14.     These vans, known as "Z Backscatter Vans," are capable of seeing through vehicles and clothing and routinely store the images that they generate.

15.     Documents obtained by EPIC from the DHS indicate that the agency has spent millions of dollars developing and acquiring mobile body scanner technology, as well as body scanner technology for use in surface transit and other high occupancy venues.

**EPIC Submitted a FOIA Request to the DHS For Documents Regarding the Development and Deployment of Body Scanner Technology in Surface Transit and Street-Roaming Vans**

16.     On November 24, 2010, EPIC transmitted, via certified mail, a written FOIA request to the DHS for agency records ("EPIC's FOIA Request").  EPIC requested the following agency records:

1.  All documents detailing plans by federal law enforcement agencies to implement body scanner technology in the surface transportation context.

2.  All contracts, proposals, and communications with private transportation and shipping companies (including, but not limited to NJ PATH, Amtrak, and Greyhound) regarding the implementation of body scanner technology in surface transit.

3.  All contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of body scanners in surface transportation.

4.  All documents detailing plans by federal law enforcement agencies to use "Z Backscatter Vans" or similar technology.

5.  All contracts, proposals, and communications with the manufacturers of the "Z Backscatter Vans" or similar technology.

6.  All contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of "Z Backscatter Vans" or similar technology.

7.  All images generated by the "Z Backscatter Vans" or body scanner technology that has been used in surface transit systems.

17.     EPIC also requested expedited processing of EPIC's FOIA Request on the bases that it pertains to a matter about which there is an urgency to inform the public about an actual or alleged federal government activity, and was made by a person primarily engaged in disseminating information.  EPIC made this request pursuant to 5 U.S.C. § 552(a)(6)(E) (2011). EPIC based the request on substantial public and press interest in the privacy risks posed by body scanner technology.

4

18.     EPIC also requested "News Media" fee status under the Freedom of Information

Act, based on its status as a representative of the news media.

19.     EPIC further requested waiver of all duplication fees.

20.     Disclosure of the records requested in EPIC's FOIA Request will contribute

significantly to public understanding of the operations and activities of the government.

21.     Disclosure of the records requested in EPIC's FOIA Request is not in EPIC's

commercial interest.

### The DHS Improperly Withheld Records Concerning Body Scanner Technology and Improperly Denied EPIC's Request for Fee Waiver

22.     On February 16, 2011, the Science and Technology Directorate ("S&T") wrote to

EPIC, stating that it had located 1,156 pages of records responsive to EPIC's FOIA Request.

23.     Of these records, S&T released 15 pages in their entirety, released 158 pages in

redacted form, and withheld 983 pages in their entirety.

24.     The documents released in full or in part by DHS included a Privacy Impact

Assessment for the Rail Security Pilot Phase II at PATH, Backscatter X-Ray for Suicide Bomber

Detection Slides, Technology Transition Agreement between the Department of Homeland

Security's Science and Technology Directorate and Transportation Security Administration,

Research and Development Award Announcement for Rapiscan with Contracts, and Northeastern

University Statements of Work with Contracts.

25.     S&T invoked exemptions 5 U.S.C. § 552(b)(3); 5 U.S.C. § 552(b)(4); and 5 U.S.C.

§ (552)(6).

26.     The agency provided no factual basis for its assertion of these exemptions.

27.     S&T also denied EPIC's request for a fee waiver and stated its intent to bill EPIC

$7.30.

**EPIC Appealed the DHS' Improper Withholding and Denial of Fee Waiver**

28.     On April 14, 2011, EPIC filed an administrative appeal ("EPIC's Appeal")

challenging the S&T's withholding of documents.

29.     EPIC's Appeal challenged the S&T's partial withholding of 158 pages of documents.

30.     EPIC's Appeal also challenged the S&T's complete withholding of 983 pages of

documents.

31.     EPIC's Appeal also challenged the S&T's denial of fee waiver and decision to bill

EPIC $7.30.

32.     To date, EPIC has received no substantive determination regarding this appeal.

## Count I
### Violation of the FOIA: Wrongful Withholding of Agency Records

33.     Paragraphs 1-32 above are hereby incorporated by reference as if set forth fully

herein.

34.     EPIC has exhausted the applicable administrative remedies with respect to EPIC's

FOIA Request.

35.     The DHS has wrongly withheld responsive agency records responsive to EPIC's

FOIA Request to which EPIC is entitled under the FOIA.

36.     EPIC is entitled to injunctive relief compelling the release and disclosure of the

requested agency records.

37.     The DHS wrongly denied EPIC's request for a feed waiver.

38.     EPIC is entitled to injunctive relief compelling the agency to grant EPIC's request

for a fee waiver.

**Requested Relief**

WHEREFORE, Plaintiff prays that this Court:

A.    order Defendant to produce all agency records responsive to EPIC's FOIA

Request within **five days** of the Court's Order in this matter;

B.    order the Defendant to waive all fees concerning EPIC's FOIA Request;

C.    award Plaintiff its costs and reasonable attorneys' fees incurred in this action

pursuant to 5 U.S.C. § 552(a)(4)(E) (2011); and

D.    grant such other relief as the Court may deem just and proper.

Respectfully submitted,

By: _____

John Verdi, Esquire (DC Bar # 495764)
Marc Rotenberg, Esquire (DC Bar # 422825)
Ginger McCall, Esquire*
ELECTRONIC PRIVACY INFORMATION
CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: May 20, 2011

* Member in good standing of DC Bar – awaiting assignment of DC Bar number.