# EXHIBIT 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 11-00945 (ABJ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) | |

## DECLARATION OF REBECCA MEDINA

I, Rebecca Medina, make this declaration in support of Defendant's Motion for Summary Judgment.

1.      I am a Senior Policy Advisor in the Explosives Division (EXD), Science and Technology Directorate (S&T), Department of Homeland Security (DHS). I have held this position since becoming a Federal employee in 2008. Before becoming a Federal employee, I was an employee of Booz, Allen, Hamilton, Inc., assigned to DHS as a program analyst.

2.      In my current capacity, my responsibilities include advising the Director of EXD on all external and internal administrative tasks related to the EXD mission. My responsibilities as Senior Policy Advisor have also given me awareness and knowledge of all EXD projects, past and present, making me uniquely qualified to handle the search for records pursuant to Freedom of Information Act (FOIA) requests that are received with respect to EXD activities.

### S&T's Work with Explosives Detection Systems

3.      Following several bombings of mass transit systems around the world in the early and mid-2000s, S&T decided to explore the methods and technologies available for detecting

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No.: 11-00945 (ABJ) |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | ) ) ) | |
| Defendant. | ) ) ) | |

## DECLARATION OF REBECCA MEDINA

I, Rebecca Medina, make this declaration in support of Defendant's Motion for Summary Judgment.

1.     I am a Senior Policy Advisor in the Explosives Division (EXD), Science and Technology Directorate (S&T), Department of Homeland Security (DHS).  I have held this position since becoming a Federal employee in 2008.  Before becoming a Federal employee, I was an employee of Booz, Allen, Hamilton, Inc., assigned to DHS as a program analyst.

2.     In my current capacity, my responsibilities include advising the Director of EXD on all external and internal administrative tasks related to the EXD mission.  My responsibilities as Senior Policy Advisor have also given me awareness and knowledge of all EXD projects, past and present, making me uniquely qualified to handle the search for records pursuant to Freedom of Information Act (FOIA) requests that are received with respect to EXD activities.

### S&T's Work with Explosives Detection Systems

3.     Following several bombings of mass transit systems around the world in the early and mid-2000s, S&T decided to explore the methods and technologies available for detecting

and preventing similar attacks within the United States. As a result, in 2005, S&T's Homeland Security Advanced Research Projects Agency (HSARPA) published a broad agency announcement (BAA) entitled "Prototypes and Technology for Improvised Explosives Device Detection (PTIEDD)" in order to solicit research and prototype development of devices capable of detecting explosives in vehicles, leave-behind packages, and packages carried by suicide bombers. The BAA asked for white papers and proposals covering these topical areas.

4.      Bidders were required to register and submit proposals online at a password-protected website. All data uploaded to the website was protected from public view or download and could only be reviewed by the submitter, authorized government representatives, support contractors and assigned evaluators who had signed appropriate non-disclosure agreements. Furthermore, all submissions were considered proprietary/source selection sensitive.

5.      Ultimately, HSARPA awarded a contract to Northeastern University (NEU) to assess the state of the art in explosives detection technology and its adaptability to mass transit threat scenarios. This "proof of concept" effort was designed to assess the feasibility of placing modified Z Backscatter detection devices in vans for use in and near mass transit locations. NEU subcontracted to Raytheon Corporation for use of its technology in this area. Backscatter is an advanced form of X-ray imaging capable of detecting hidden weapons and explosives on individuals.

6.      HSARPA also awarded a contract to Rapiscan, Inc. (Rapiscan) to explore how its portal-based detector system might be adapted for standoff detection in mass transit threat scenarios. Since mass transit involves the constant movement of large numbers of people and vehicles, the research focus was on "stand-off" detection to reduce the risk of impeding travel system efficiencies. The minimal distance between detector and target was at to be at least 3 – 5

meters. At the time, no deployable or operational system existed for this purpose and none exists even today.

7.      By 2008, the contracts ended and EXD, having succeeded HSARPA in managing the program, decided to terminate it.

<u>The Processing of EPIC's FOIA Request</u>

8.      On December 14, 2010, I received a tasking from the S&T Executive Secretary (Exec Sec) office relaying a request under FOIA from the Electronic Privacy Information Center (EPIC) for the following records:

> a. "All documents detailing plans by federal law enforcement agencies to implement body scanner technology in the surface transportation context."
>
> b. "All contracts, proposals, and communications with private transportation and shipping companies (including, but not limited to NJ PATH, Amtrak, and Greyhound) regarding the implementation of body scanner technology in surface transit."
>
> c. "All contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of body scanners in surface transportation."
>
> d. "All documents detailing plans by federal law enforcement agencies to use 'Z Backscatter Vans' or similar technology."
>
> e. "All contracts, proposals, and communications with the manufacturers of the 'Z Backscatter Vans' or similar technology."
>
> f. "All contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of 'Z Backscatter Vans' or similar technology."
>
> g. "All images generated by the 'Z Backscatter Vans' or body scanner technology that has been used in surface transit systems."

9.      Exec Sec also provided guidelines regarding how to conduct a search and the availability of exemptions to release under FOIA for certain types of records.

10.     The records search focused on EXD because, as the division that dealt with explosives detection (including Z Backscatter Vans and body scanner technology), it was the

only one to possess records responsive to EPIC's FOIA request. Additionally, the HSARPA

employee who had overseen explosives detection research, Dr. Mike Shepherd, had been

subsequently reassigned to EXD as part of a reorganization of S&T and had brought his files

with him.

11.     Upon receiving the FOIA request from Exec Sec, I forwarded it to the five

employees in EXD, including Dr. Shepherd, who work on issues related to standoff detection or

mass transit security and asked them whether they were involved in any programs in which

Whole Body Imaging, Advanced Imaging Technology, Millimeter Wave, or Backscatter

technologies were being implemented as a detection option in the mass transit context. Two

employees replied affirmative and three replied negatively.

12.     I then asked the two employees, both program managers, who replied

affirmatively to search all paper and electronic files, including e-mails, for the projects they had.

Files, both paper and electronic, are kept by the managers for each program. Paper files are

stored in file cabinets or binders by project. Electronic files are stored on each program

manager's location on the network drive, typically in master folders for each project. Emails are

stored in these master folders or electronic in-boxes. Older emails are stored in electronic

archive locations.

13.     As to the paper search, the program managers searched the cabinets and binders.

As to the electronic search, they searched the network drive master folders, e-mail, and email

archives using the following search terms to retrieve potentially responsive records: "Whole

Body Imager," "Advanced Imaging Technology," "Millimeter Wave," "Backscatter," and "Z-

Backscatter Van." Within two weeks of my request, I received either a negative response or

potentially responsive records from all the EXD employees.

4

14.     The EXD staff provided 21 records, comprising approximately 1,100 pages of records for review. I conducted an independent review to assess the records' responsiveness to the request and forwarded them to S&T's Office of General Counsel (OGC) to determine whether the documents were subject to any of the disclosure exemptions under FOIA and to Exec Sec for processing for release to EPIC of all responsive, non-exempt records.

15.     The initial record sweep by EXD staff picked up a study entitled "DHS S&T Countermeasures Test Beds (CMTB) Rail Security Pilot Final Report." The report, dated December 11, 2006, documents research activities conducted by S&T for detecting explosives in heavy rail transit systems. The study, which consists of 312 pages, bears the legend "Sensitive Security Information," and on that basis was withheld from disclosure under 49 U.S.C § 114 and 49 C.F.R part 1520. Upon further review of the study, however, S&T has determined that the study is not responsive to any of the categories of records sought by EPIC in its FOIA request. Specifically, the report contents and study itself do not set forth a plan by federal law enforcement agencies to implement body scanner technology or to use Z Backscatter Vans or similar technology; are not contracts, proposals or communications regarding the implementation of body scanner technology, body scanners, Z Backscatter Vans or similar technology; and do not contain any images generated by Z Backscatter Vans or body scanner technology.

16.     The responsive records can be grouped into two categories: (1) awarded contracts and contract proposals between DHS and NEU for explosives detections machines, and (2) awarded contracts and contract proposals between DHS and Rapsican for explosives detection machines.

17.     During the course of S&T's review, FOIA exemptions 3, 4, 5, and 6 were applied to withhold 20 records, 12 full and eight in part. Six of the 20 were withheld under multiple

exemptions. I provide below a general overview of the documents withheld and the reasons for withholding them. The attached *Vaughn* index individually describes each record, the applicable exemptions, and the reasons for withholding.

### Exemption 3

18.     DHS is withholding four documents under Exemption 3. These documents have been withheld in full as information submitted by NEU and Rapiscan as part of their original proposals in response to BAA 05-03. This information was not incorporated by reference or set forth in the contracts awarded to NEU and Rapiscan, and it is therefore protected under 41 U.S.C. § 253b(m), which prohibits disclosure of competitive proposal information.

### Exemption 4

19.     DHS is withholding nine records under Exemption 4, five in full and four in part. The information withheld constitutes confidential commercial information related to the efficacy of the systems that Rapiscan provided to the research program. Rapiscan was required to submit the information as part of its contractual obligations.

20.     The withheld information provided by Rapiscan was essential to determining whether the system could be adapted to mass transit threat scenarios. It includes technical specifications, capabilities and assessments of its strengths and weaknesses based on its performance.

21.     Release of this information would cause substantial harm to Rapiscan's competitive position with respect to future government procurements, as well as giving competitors insight into their product capabilities. Furthermore, companies and research institutions will be less likely to participate in development efforts with DHS without reasonable assurance that their proprietary information will not be publicly disclosed and thus available to

competitors. Release of the information therefore will likely impair DHS's ability to help

incubate novel and emerging technologies that could be deployed to protect the homeland at a

time when the threat of a domestic terrorist attack remains of utmost concern.

## Exemption 5

22.     DHS is withholding three records under exemption 5, two in full and one in part.

The information withheld relates to the programmatic decision-making process of how EXD

employees managed the research as it was being conducted by Rapiscan and NEU under their

respective contracts. One withheld record consists of minutes from a preliminary design review

meeting at which project performance and whether to move to the next phase of the contract was

discussed. The other two records are email communications and briefing materials regarding the

ongoing findings and efforts of NEU and Rapiscan's research. These records reveal EXD

employees' thought process in managing the contracts and making decisions regarding the

progress of developing the systems. Release of this information would have a chilling effect on

discussions, opinions and factors being weighed as the contracts progressed. Release could also

confuse and mislead the public as it did not represent final agency decison-making but the

processes within a contract performance before completion.

## Exemption 6

23.     DHS has redacted from eight records telephone numbers, email addresses and

signatures of employees of Rapiscan, NEU and DHS involved in the contracts. The release of

this information would cause a clearly unwarranted invasion of personal privacy, which

outweighs any minimal public interest in their disclosure. S&T was particularly careful to

withhold contact information for individuals involved in mass transit security projects in order to

protect them from the risk of harassing or threatening emails or phone calls in the work place.

7

Signatures have been redacted as information that is personalized to the individual and that is useful to a thief who attempts to steal an identity or pose as that person. The names of the individuals, however, have been released.

24.     By early February 2011, EXD finalized coordination with Exec Sec and OGC of the records responsive to EPIC's request. In summary, EXD released 15 pages in their entirety, partially released 158 pages, and withheld 671 pages in their entirety.

25.     Subsequent to this action being filed, a further review of the withheld information has been done in order to determine whether any additional non-exempt information could be segregated and released. As a result, DHS has released to EPIC two records that had been withheld in full, all information that had been withheld in part in another record, and segregable information from three additional records withheld in part. Thus, as set forth in the attached *Vaughn* index, DHS is presently withholding 17 records in full or in part.

26.     DHS has also determined that it erroneously charged EPIC $7.30 to conduct the search and review in response to its FOIA request. DHS has waived that charge.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: August 18, 2011

Rebecca Medina
Senior Policy Advisor
Explosives Division
Science and Technology Directorate
Department of Homeland Security

8

# ATTACHMENT 1

*EPIC v. DHS*, No. 11-945 (D.D.C.)
*Vaughn* Index
Documents withheld in full or in part

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 1 | 38 | Rapiscan Systems, Phase II Proposal for "Non-Intrusive Detection of Suicide Bombers," dated July 20, 2006. | This record contains all documents submitted by Rapiscan as part of their Phase II proposal in response to DHS/S&T Broad Agency Announcement 05-03, issued April 8, 2005. | (b)(3) | This record is withheld in full. 41 U.S.C. § 253b(m) prohibits the release under FOIA of any competitive proposal except for those portions of the proposal set forth or incorporated by reference in a government contract. The information contained in this record was not set forth or incorporated into the contract awarded to Rapiscan. |
| 2 | 30 | Rapiscan Systems, Proposal for "Non-Intrusive Detection of Suicide Bombers," dated April 8, 2005. | This record contains all documents submitted by Rapiscan as part of their original proposal in response to DHS/S&T Broad Agency Announcement 05-03. | (b)(3) | This record is withheld in full. 41 U.S.C. § 253b(m) prohibits the release under FOIA of any competitive proposal except for those portions of the proposal set forth or incorporated by reference in a government contract. The information contained in this record was not set forth or incorporated into the contract awarded to Rapiscan. |

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 3 | 25 | Northeastern University, BomDetec—Wide Area Surveillance and Suicide Bomber Detection at >10M, Technical Proposal, dated September 16, 2005. | This record contains all documents submitted by Northeastern University as part of their original proposal in response to DHS/S&T Broad Agency Announcement 05-03. | (b)(3) | This record is withheld in full. 41 U.S.C. § 253b(m) prohibits the release under FOIA of any competitive proposal except for those portions of the proposal set forth or incorporated by reference in a government contract. The information contained in this record was not set forth or incorporated into the contract awarded to Northeastern University. |
| 4 | 96 | Northeastern University, BomDetec—Wide Area Surveillance and Suicide Bomber Detection at >10M—Phase II, Technical Proposal. | This record contains all documents submitted by Northeastern University as part of their Phase II proposal in response to DHS/S&T Broad Agency Announcement 05-03. | (b)(3) | This record is withheld in full. 41 U.S.C. § 253b(m) prohibits the release under FOIA of any competitive proposal except for those portions of the proposal set forth or incorporated by reference in a government contract. The information contained in this record was not set forth or incorporated into the contract awarded to Northeastern University. |

2

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 5 | 8 | E-mail dated April 30, 2008 from John Beaty, Northeastern University, to Mike Shepard, plus three attachments. | The e-mail contains a discussion between a representative of Northeastern University and a DHS/S&T Federal program manager regarding Phase II of the BomDetec program. | (b)(5) (b)(6) | This record is withheld in full.  The document qualifies for protection under the deliberative process privilege and is therefore exempt from disclosure under exemption 5.  This email outlines and attaches options related to potential test methodology and technology choices to be made, as well as the progression to develop concepts of operation for equipment once selected and matured for Phase II of the BomDetec program.  The release of this information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.  This record also contains privacy information withheld under exemption (b)(6) which would cause a clearly unwarranted invasion of personal privacy if released.  The information withheld consists of the author's phone number and email address.  The privacy interests of the individuals in this agreement outweigh any minimal public interest in |

3

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| | | | | | disclosure of the withheld information. |
| 6 | 8 | Rapiscan Systems, Factory Acceptance Test Procedure for Secure Stand-off Whole Body Imager. | This record provides Rapiscan's internal procedures and software configurations for the factory acceptance testing of Rapiscan's Whole Body Imager. | (b)(4) | This record is withheld in full. The information withheld includes:

(1) internal procedures and software configurations for the factory acceptance testing of Rapiscan's Whole Body Imager;

(2) specific technological capabilities (i.e. how many people can be scanned in certain periods of time, how long average detection takes), design techniques, frequency requirements, operational techniques and requirements, and graphics that show how the Rapiscan system would scan subjects in both single sided and walk through set ups; and

(3) information identifying system performance strengths and weaknesses of the capabilities of the standoff detection system, as a result of fulfilling contract award objectives.

This information is deemed |

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| | | | | | proprietary as it provides specific operational data and requirements for standoff detection systems. If this information was released it would cause competitive harm to Rapiscan's efforts and products and with respect to future procurements. |
| 7 | 39 | Rapiscan Systems, Presentation to DHS/S&T, Non-Intrusive Detection of Suicide Bombers, Project Kick-off and Preliminary Design Review Meetings. | This document consists of slides presented to DHS/S&T staff related to the Non-Intrusive Detection of Suicide Bombers work being conducted under contract by Rapiscan. These slides contain technical information, data, and images as well as system specifications and modifications. | (b)(4) | This record is withheld in full. The information withheld includes: (1) technical information, data and images as well as system specifications and modifications unique to Rapiscan's stand-off detection system; (2) specific technological capabilities (i.e. how many people can be scanned in certain periods of time, how threats are spatially resolved, how long average detection takes), design techniques, frequency requirements, operational techniques and requirements, and graphics that show how the Rapiscan system would scan subjects in both single sided and walk through set ups; and (3) information identifying system |

| | | |
|---|---|---|
| performance strengths and weaknesses of the capabilities of the standoff detection system, as a result of fulfilling contract award objectives.<br><br>This information is deemed proprietary as it provides specific operational data and requirements for standoff detection systems. If this information was released it would cause competitive harm to Rapiscan's efforts and products and with respect to future procurements. | | |
| | | |
| | | |
| | | |

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 8 | 5 | Minutes of meeting held between DHS/S&T and Rapiscan regarding Secure Standoff Preliminary Design Review, held on June 28, 2006. | Minutes prepared of a meeting between Rapiscan Systems and DHS/S&T related to Secure Standoff efforts. | (b)(4)<br>(b)(5)<br>(b)(6) | This record is withheld in full. It is withheld under exemption 4, which protects commercial or financial information obtained from a person that is privileged or confidential. The information withheld includes:<br><br>(1) Rapiscan cost estimates for both the full standoff detection system and its corresponding software;<br><br>(2) specific technological capabilities (i.e. how many people can be scanned in certain periods of time, how threats are spatially resolved, how long average detection takes), design techniques, frequency requirements, operational techniques and requirements, and graphics that show how the Rapiscan system would scan subjects in both single sided and walk through set ups; and<br><br>(3) information identifying strengths and weaknesses of the capabilities of the standoff detection system, as a result of fulfilling contract award objectives; and |

7

(4) contact information for Rapiscan employees.

This information is deemed proprietary as it provides specific operational data and requirements for standoff detection systems. The employee contact information is confidential commercial information as it would enable Rapiscan's competitors to target and raid employees with knowledge and capabilities of Whole Body Imager. If this information was released it would cause competitive harm to Rapiscan's efforts and products and with respect to future procurements.

This record is also withheld under exemption 5 as information that is protected under the deliberative process privilege. The document provides an outline of options for moving forward with the system design, internal discussions about decisions needed to be made related to a variety of possible deployment and mitigation scenarios, and the types of software that may need to be produced to manage the system effectively. Consideration of this information was necessary for

moving into Phase II of Secure Standoff program. Release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

This record also contains privacy information withheld under exemption (b)(6) which would cause a clearly unwarranted invasion of personal privacy. The withheld information consists of phone numbers and e-mail addresses for persons attending the meeting. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information.

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 9 | 73 | Rapiscan Systems, Non-Intrusive Detection of Suicide Bombers, Monthly Progress Reports, dated October 1, 2005 through June 30, 2006. | These documents consist of monthly reports outlining status of efforts to develop technology to detect suicide bombers at a stand-off distance. | (b)(4) | This record is withheld in full. It contains:

(1) the breakdown of specific labor and material costs, system performance specifications and design schematics/renderings, and images of how the system would |

identify threats;

(2) specific technological capabilities, design techniques (i.e. how many people can be scanned in certain periods of time, how threats are spatially resolved, how long average detection takes), frequency requirements, operational techniques and requirements, and graphics that show how Rapiscan system would scan subjects in both single sided and walk through set ups; and

(3) information identifying strengths and weaknesses of the capabilities of the standoff detection system, as a result of fulfilling contract award objectives.

This information is deemed proprietary as it provides specific operational data and requirements for standoff detection systems. If this information was released it would cause competitive harm to Rapiscan's efforts and products and with respect to future procurements.

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 10 | 30 | Rapiscan Systems, | This document consists of | (b)(4) | This record is withheld in full.  It |

10

| | | contains: |
| --- | --- | --- |
| Slides, Non-Intrusive Detection of Suicide Bombers, Interim Program Review Meeting, held on March 6, 2006. | slides containing a project update on technical status of a Rapiscan effort to detect suicide bombers at a stand-off distance. | (1) information related to the capability of the Rapiscan system and the technical approach the company was proposing to improve the system; |
| | | (2) drawings and images of proposed systems models and systems components as well as information on how they would be assembled; |
| | | (3) specific technological capabilities, design techniques, frequency requirements, and operational techniques and requirements; |
| | | (4) specific technical information about system capability (i.e. how many people can be scanned in certain periods of time, how threats are spatially resolved, how long average detection takes) and graphics that show how Rapiscan system would scan subjects in both single sided and walk through set ups; and |
| | | (5) information identifying strengths and weaknesses of the capabilities of the standoff |

11

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| | | | | | detection system, as a result of fulfilling contract award objectives. This information is deemed proprietary as it provides specific operational data and requirements for standoff detection systems. If this information was released it would cause competitive harm to Rapiscan's efforts and products and with respect to future procurements. |
| 11 | 9 | DHS/S&T and TSA, Technology Transfer Agreement, Standalone Backscatter X-Ray System for Imaging of Explosive Devices for the Counter-Improvised Explosive Program, dated June 18, 2008. | The document outlines plans for the transfer of technology between the DHS/S&T and the Transportation Security Administration. | (b)(6) | This record is withheld in part. The information withheld consists of signatures and email addresses of DHS and TSA officials. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information. |
| 12 | 3 | Rapiscan Systems, Slides, Walk-By or Walk Through Backscatter X-Ray for Suicide Bomber Detection. | The document provides an overview and graphics of Rapiscan's backscatter x-ray systems. | (b)(4) | This record is withheld in part. The information withheld consists of specific technical information about system capability (how many people can be scanned in certain periods of time, how threats are |

| Record number | Record Title | Number of Pages | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| | | | | | spatially resolved, how long average detection takes) and graphics that show how Rapiscan system would scan subjects in both single sided and walk through set ups. The disclosure of this information is likely to cause substantial harm to the competitive position of Rapiscan. |
| 13 | DHS, Notice to Proceed, dated July 10, 2006 | 1 | The document is a letter notifying Northeastern University that DHS there is pending the issuance of a contract for Northeastern's proposal submitted under Broad Agency Announcement 05-03. | (b)(6) | This record is withheld in part. The information withheld consists of the e-mail address and signature of one DHS official and the phone number and e-mail address of another DHS official. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information. |
| 14 | Contract and Statement of Work between DHS/S&T and Northeastern University | 72 | The document outlines the costs for supplies, services, unit price and total costs for a contract awarded under Broad Agency Announcement 05-03. | (b)(6) | This record is withheld in part under exemption 6. The information withheld consists of phone numbers, signatures, and email addresses of contracting officials and points of contact. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information. |
| 15 | Contract and Statement of Work Between DHS/S&T | 73 | This document outlines the multi-phase effort to develop a backscatter x-ray system that would detect explosive threats | (b)(4) (b)(6) | This record is withheld in part. It is withheld under exemption 4, which protects commercial or financial information obtained from a person |

13

| | and Rapiscan, Inc. | on people, along with the costs for supplies, services, unit price and total costs for a contract award under Broad Agency Announcement 05-03. | that is privileged or confidential. The information withheld consists of the costs for supplies, services and unit prices related to detection technologies; and of contact information for Rapiscan employees. If released, this would allow Rapiscan's competitors to unfairly bid on future contracts and to raid Rapiscan's employees.<br><br>This record is also partially withheld under exemption 6. The information withheld consists of phone numbers, signatures, and e-mail addresses of contracting officials and points of contact. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information. |

| Record number | Number of Pages | Record Title | Record Description | Exemption | Justification for Withholding |
|---|---|---|---|---|---|
| 16 | 1 | E-mail between Ron Hughes of Rapiscan Systems and DHS staff regarding "Summary of Meeting with HSARPA—March 7, 2006." | The document is an email outlining the topics of a meeting held between Rapiscan and DHS on March 7, 2006. | (b)(4) (b)(6) | This record is withheld in part. It is partially withheld under exemption 4, which protects commercial or financial information obtained from a person that is privileged or confidential. The information withheld consists of specific detection capabilities by a number of sensors at a certain distance, and of Hughes' contact information. If this information was released it would cause substantial harm to Rapiscan's efforts and products and with respect to future procurements, and allow competitors to raid Rapiscan employees.  This record is also partially withheld under exemption 6. The information withheld consists of the author's e-mail addresses and phone number. The privacy interests of the individuals in this agreement outweigh any minimal public interest in disclosure of the withheld information. |
| 17 | 7 | SSA briefing for BAA 05-03. | Pre-decisional Rapiscan technology development outlines | (b)(4) (b)(5) (b)(6) | This record is withheld in part. The contact information for Rapiscan employees has been withheld under Exemption 4 as confidential commercial information. Release of this information would allow competitors to raid Rapiscan |

15

employees.

This record is also partially withheld under exemption 5, which protects from disclosure those inter- or intra-agency documents that are normally privileged in the civil discovery context. After carefully reviewing the document, it was determined that the document qualifies for protection under the deliberative process privilege. This document provides a discourse on the strengths and weaknesses of the prototype system and items for the agency to consider before moving forward with further development. The document is marked as "Pre-Decisional Source Selection Sensitive" by DHS. The release of this internal information would discourage the expression of candid opinions and inhibit the free and frank exchange of information among agency personnel.

This record also contains privacy information withheld under exemption 6. The information withheld consists of phone numbers, signatures, and email addresses for two Rapiscan officials. The privacy interests of

| | the individuals in this document outweigh any minimal public interest in disclosure of the information. |
| --- | --- |
| | |
| | |
| | |
| | |

17