# EXHIBIT 4

## DECLARATION OF PETER MODICA

Pursuant to 28 U.S.C. § 1746, I, Peter Modica, hereby declare as follows:

1. I am currently employed by Rapiscan Systems, Inc. ("Rapiscan"). I have been employed by Rapiscan for 16 years, and am currently the Vice President, Product Line Management, which includes oversight of all product research and development projects. In this role, I have firsthand knowledge regarding Rapiscan's contract with the Department of Homeland Security ("DHS") on the Prototypes and Technology for Improvised Explosives Device Detection ("PTIEDD") Program. I have personal knowledge of the facts stated herein, and if called as a witness in any proceeding, I would be competent to testify to the following facts.

2. This declaration is being provided at the request of the Department of Justice for use in litigation under the Freedom of Information Act against the DHS involving, in part, documents that Rapiscan has provided to the government as part of DHS' PTIEDD Program. Attachment 1 to this declaration includes a list of all documents that I have been informed are at issue in the DHS litigation. I am familiar with the contents of these documents and I have carefully reviewed them.

3. While not intended to be an exhaustive list of the types of information Rapiscan considers proprietary, release of Rapiscan's (a) internal cost information; (b) unit-pricing information; (c) design details and specifications and performance capabilities for Rapiscan's scanner systems; and (d) the contact and other personal

information of Rapiscan's employees, all contained in the documents at issue in the DHS litigation, would cause Rapiscan substantial competitive harm in future government and commercial procurements.

4. In anticipation that its work related to PTIEDD Program would require limited disclosure to DHS of its proprietary and confidential information, Rapiscan implemented several measures to ensure that such information was not publically disclosed. For example, Rapiscan secured Non-Disclosure Agreements from DHS' technical advisors supporting DHS on the PTIEDD Program.

Indirect Cost Information

5. Rapiscan considers its internal cost information, including labor rates, indirect costs, and costs for supplies and services to be confidential and proprietary, and the disclosure of Rapiscan's internal cost information would cause Rapiscan grave competitive harm. Rapiscan does not release its internal cost information publically, and takes precautions to secure its pricing information as trade secret. Rapiscan maintains such cost information on its secure, password-protected intranet system and access is limited to people authorized to see pricing information.

6. Disclosure of Rapiscan's internal cost information would cause substantial competitive harm because competitors would have insight into Rapiscan's cost structure, which would enable them to predict Rapiscan's ability to price contracts in future procurements. Rapiscan voluntarily submitted this

information to the Government with the understanding that the information would not be disclosed outside the Government. Rapiscan does not consider the release of this information a "cost of doing business with the Government."

Unit Pricing Information

7.  Disclosure of this unit-pricing information would cause Rapiscan substantial harm as competitors could undercut Rapiscan's prices in future competitions. Such disclosure would place Rapiscan at a competitive disadvantage in all future procurements because Rapiscan's competitors would have a roadmap to how Rapiscan prices its scanner systems and related research and development projects. In addition, the disclosure of Rapiscan's unit-pricing information, when combined with other pricing information, would provide competitors insight into how Rapiscan and its suppliers and subcontractors adjust their prices over time, thereby allowing Rapiscan's competitors additional information as to how Rapiscan will price its systems and services in the future. The confidential unit-pricing information would give Rapiscan's competitors insight into Rapiscan's pricing strategy, costs, markups, efficiencies, and economies of scale. As such, disclosure of Rapiscan's unit-pricing information would cause Rapiscan substantial competitive harm.

Systems Design and Specification Information

8.  Rapiscan would suffer substantial competitive harm if design information and performance specifications for its Secure 1000 scanner system at

issue here were made available to a competitor. The information at issue describes the capabilities of Secure 1000 scanner system, including, for example, image resolution measurements, detection capabilities, effectiveness of the system at particular distances, and the ability of Rapiscan's scanner to operate in multiple configurations. This system design and capabilities information is customarily not made available to the public.

9. The disclosure of design information and performance specifications is likely to cause substantial harm to the competitive position of Rapiscan. The ability to design and build the most effective and efficient scanner system is an extremely important part of the competitive landscape for scanner systems. Rapiscan considers the design for its Secure 1000 system an important technical achievement that gives it a decisive advantage over its competitors. The performance capabilities of this system are very important aspect of the overall design and construction of Rapiscan's scanner system. Knowledge of such performance capabilities would give Rapiscan's competitors insight into the design specifications of the Secure 1000 system and would alert competitors to the standard of performance they must achieve to successfully compete against Rapiscan. Access to such capabilities information, and to design details themselves, would permit a competitor to more effectively design and build its own systems and would, therefore, cause Rapiscan substantial competitive injury.

Information Related to Employees

10. Rapiscan would suffer substantial competitive harm if the contact and other personal information of employees and contractors involved in the radiation tests at issue here were made available to a competitor. Rapiscan's employee contact information are contained throughout all the documents provided by DHS. The contact information and other personal information of Rapiscan's key employees and the work they perform is not made public.

11. Rapiscan has invested heavily in the training of its employees and considers this human capital Rapiscan's most valuable asset. A competitor would benefit (and Rapiscan would be harmed) by the release of the employee information in the documents at issue here because the competitor would know the information about key Rapiscan employees with knowledge of the development and capabilities of Rapiscan's scanner systems. A competitor would then be armed with the information to "raid" these employees and ascertain this information.

12. Having worked in the scanner systems industry for over a decade, I understand that competitive environment in which Rapiscan competes. Further, I am familiar with the firms against which Rapiscan competes. The market for advanced imaging technology is highly competitive both in the United States, in Europe, and around the world. In such a competitive environment, contractors seek any increment of useful information about their competitors' businesses, particularly their pricing and technical capabilities, because obtaining that information could give them a decisive advantage.

13. There is considerable "actual competition" for the provision of scanner systems to the United States government. For instance, Rapiscan expects that the TSA will procure 500 Advanced Imaging Technology systems (which is synonymous with Rapiscan's Secure 1000 systems), as specified in the FY2011 appropriations bill. Rapiscan expects other firms to compete for this work. These firms would benefit from Rapiscan's confidential information at issue because they could more effectively design their scanner systems and structure their proposals to compete with Rapiscan.

14. Because of the intensely competitive nature of the scanner systems industry, Rapiscan would be less willing to participate in future research and development projects, such as the PTIEDD Program, if Rapiscan were required to disclose its proprietary information as a condition of participation in such a governmental program.

I declare under penalty of perjury that the foregoing is true and correct.

*Peter Modica* (signature)
Peter Modica

Executed on: August 22, 2011

## ATTACHMENT 1

| | Document Title | Document Description |
|---|---|---|
| 1 | Rapiscan Systems, Slides, Walk-By or Walk Through Backscatter X-Ray for Suicide Bomber Detection | The document provides an overview and graphics of Rapiscan's backscatter x-ray systems. |
| 2 | Contract Award and Statement of Work Between DHS/S&T and Rapiscan Systems | This document outlines the multi-phase effort to develop a backscatter x-ray system that would detect explosive threats on people, along with the costs for supplies, services, unit price and total costs for a contract award under Broad Agency Announcement 05-03. |
| 3 | March 8, 2006 e-mail between Ron Hughes of Rapiscan Systems and DHS staff regarding "Summary of Meeting with HSARPA—March 7, 2006" | The document is an email outlining the topics of a meeting held between Rapiscan and DHS on March 7, 2006. |
| 4 | Pre-decisional document of Rapiscan Detection Capabilities | Rapiscan marketing piece and pre-decisional Rapiscan technology development outlines |
| 5 | Rapiscan Systems, Phase II Proposal for "Non-Intrusive Detection of Suicide Bombers," dated July 20, 2006. | This record contains all documents submitted by Rapiscan as part of their Phase II proposal in response to DHS/S&T Broad Agency Announcement 05-03, issued April 8, 2005. |
| 6 | Rapiscan Systems, Proposal for "Non-Intrusive Detection of Suicide Bombers," dated April 8, 2005. | This record contains all documents submitted by Rapiscan as part of their original proposal in response to DHS/S&T Broad Agency Announcement 05-03. |
| 7 | Rapiscan Systems, Factory Acceptance Test Procedure for Secure Stand-off Whole Body Imager. | This record provides Rapiscan's internal procedures and software configurations for the factory acceptance testing of Rapiscan's Whole Body Imager. |

|    | Document Title | Document Description |
|----|----------------|----------------------|
| 8  | Rapiscan Systems, Presentation to DHS/S&T, Non-Intrusive Detection of Suicide Bombers, Project Kick-off and Preliminary Design Review Meetings. | This document consists of slides presented to DHS/S&T staff related to the Non-Intrusive Detection of Suicide Bombers work being conducted under contract by Rapiscan. These slides contain technical information, data, and images as well as system specifications and modifications. |
| 9  | Minutes of meeting held between DHS/S&T and Rapiscan on June 28, 2006. | Meeting minutes for a meeting between Rapiscan Systems and DHS/S&T related to Secure Standoff efforts. |
| 10 | Rapiscan Systems, Non-Intrusive Detection of Suicide Bombers, Monthly Progress Reports, dated October 1, 2005 through June 30, 2006 | These documents consist of monthly reports outlining status of efforts to develop technology to detect suicide bombers at a stand-off distance |
| 11 | Rapiscan Systems, Slides, Non-Intrusive Detection of Suicide Bombers, Interim Program Review Meeting, held on March 6, 2006. | This document consists of slides containing a project update on technical status of a Rapiscan effort to detect suicide bombers at a stand-off distance. |