IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER <br><br> Plaintiff, <br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY <br><br> Defendant. | No. 1:11-00945 (ABJ) |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS
<u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff the Electronic Privacy Information Center ("EPIC") submits the following reply in support of its motion for summary judgment against Defendant the U.S. Department of Homeland Security ("DHS"). EPIC challenges the DHS's withholding documents under Freedom of Information Act ("FOIA") Exemptions 4 and 5. EPIC also seeks its attorneys' fees and costs in this lawsuit, because EPIC qualifies for such relief irrespective of the outcome of the parties' cross-motions for judgment.

The agency is asserting that purely factual information authored by third party entities should be protected under Exemption 5. This would be a radical expansion of Exemption 5, and would be directly contrary to FOIA's intended narrow interpretation of exemptions.

The agency also asserts that pieces information that have already been released to the public – in several examples, released *by Rapiscan*, itself – should be protected as confidential information under Exemption 4. This is clearly outside of the intended purpose of this exemption.

**FACTUAL BACKGROUND**

In 2005, the Transportation Security Administration ("TSA"), a DHS component, began testing Whole Body Imaging ("WBI") technology solely in U.S. airports to examine air travelers on commercial aircraft. WBI devices, which use either backscatter x-ray and millimeter wave technology, capture detailed, three-dimensional images of individuals. The WBI devices literally peer through clothing to observe and capture an image of the naked human body.

In March 2010, the DHS released a "Surface Transit Security Priority Assessment," which detailed the agency's plans to expand significantly the WBI program and deploy new body scanner technology in America's surface transportation systems, including "mass transit, highways, freight rail, and pipelines…" Body scanner devices had previously been tested at surface transportation stations in both the U.S. and abroad. In 2006, millimeter wave machines were tested on PATH train riders at a New Jersey train station. The DHS has acknowledged that both passive and active millimeter wave technology were employed in this setting. In the summer of 2009, the PATH train system, in conjunction with the Department of Homeland Security, once again tested body scanner technology on PATH travelers.

The DHS has also considered the deployment of mobile WBI technology, referred to as "Z Backscatter Vans." These vans are equipped with concealed WBI devices and are able to scan other vehicles while driving down public roadways and are capable of seeing through vehicles and clothing.

On November 24, 2010, EPIC transmitted, via certified mail, a written FOIA request to the DHS for agency records ("EPIC's FOIA Request"). EPIC requested the following agency records:

> all documents detailing plans by federal law enforcement agencies to implement body scanner technology in the surface transit context;
>
> all contracts, proposals, and communications with private transportation and shipping companies (including, but not limited to NJ PATH, Amtrak, and Greyhound) regarding the implementation of body scanner technology in surface transit;

    all contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of body scanners in surface transportation;

    all documents detailing plans by federal law enforcement agencies to use "Z Backscatter Vans" or similar technology;

    all contracts, proposals, and communications with the manufacturers of the "Z Backscatter Vans" or similar technology;

    all contracts, proposals, and communications with states, localities, tribes, and territories (and their subsidiaries or agencies) regarding the implementation of "Z Backscatter Vans" or similar technology;

    all images generated by the "Z Backscatter Vans" or body scanner technology that has been used in surface transit systems.

    The DHS failed to make a timely determination concerning EPIC's FOIA Request, and failed to disclose any records within the FOIA's deadline. The agency did not substantively respond to EPIC until February 16, 2011, two and a half months after EPIC sent its request.

    On February 16, 2011, the Science and Technology ("S&T") component of the DHS stated that it had located 1,156 pages of records responsive to EPIC's FOIA request. Of these records, the agency released 15 pages in their entirety, 158 pages in redacted form, and withheld 983 pages in their entirety. On April 14, 2011, EPIC filed an administrative appeal ("EPIC's Appeal") challenging the S&T's withholding of documents. EPIC's Appeal challenged the S&T's partial withholding of 158 pages of documents and the S&T's complete withholding of 983 pages of documents.

    The agency failed to comply with the statutory deadline to reply to EPIC's Appeal and EPIC filed suit on May 20, 2011, initiating this lawsuit. On August 15, 2011, following the filing of this suit, the agency disclosed an additional 151 pages in their entirety and 21 pages in redacted form.

    As set forth below, EPIC challenges the propriety of the agency's withholdings under

3

Exemptions 4 and 5. EPIC's reply supports its cross-motion for summary judgment, Dkt. No. 10 ("EPIC's Motion") and opposes the DHS's Reply in Support of its Motion For Summary Judgment, Dkt. No. 9 ("Def.'s Motion for Summ. Judg."), and Opposition to Plaintiff's Cross-Motion for Summary Judgment, Dkt. No. 13 ("Def. Reply").

## ARGUMENT

EPIC has correctly challenged the agency's withholding of documents under Exemptions 4 and 5. The agency is wrongly withholding documents under Exemption 5 that are neither intra/inter-agency nor deliberative. The agency is also wrongly withholding non-confidential documents under Exemption 4.

### I. EPIC has Clearly Challenged the DHS's Withholdings Under Exemption 4

Though the agency claims that EPIC is "not purporting to challenge DHS's invocation of Exemption 4," Def. Reply at 1, EPIC has, in fact, clearly challenged the agency's invocation of this exemption. Pl.'s Motion for Summ. Judg. at 14 ("**The Agency has Wrongly Withheld Information Under Exemption 4**")(emphasis in original); *Id.* at 14 – 17; *Id.* at 22 ("As discussed above, Defendant's Motion for Summary Judgment should be denied as to the withholdings under Exemption 5 and all segregable portions of documents withheld under Exemption 4"); Plaintiff's Proposed Order, Dkt. No. 10, Text of Proposed Order, ("ORDERED that Defendant disclose to Plaintiff, within seven (7) days of the date of this order, all documents withheld under Exemption 5 and all segregable portions of documents withheld under Exemption 4").

The agency's apparent confusion here is unwarranted. EPIC has clearly and substantively challenged the agency's Exemption 4 withholdings.

### II. FOIA Exemption 5 Does Not Permit the Agency to Withhold Emails, Meeting Minutes, and Briefing Materials

DHS is withholding three records, two in full and one in part, under Exemption 5 as records protected by the deliberative process privilege. *Vaughn* Index, Records #5, 8, 17 (Dkt. 9-2); Def.'s Motion for Summ. Judg. at 18-22. EPIC has correctly argued that Exemption 5 is inapplicable because the records are not intra-agency documents and contain unprotected factual information that should be released.

### A. *The Documents are Not "Inter-agency or Intra-agency Memorandums or Letters" and Therefore are Not Exempt Under Exemption b(5)*

The Supreme Court has recognized that memorandums prepared by outside experts and consultants can be considered "inter-agency or intra-agency" for the purposes of Exemption 5. *U.S. Dept. of Justice v. Julian*, 486 U.S. 1, 18 n.1 (1988). However, for materials created or provided by consultants to be exempt under Exemption 5, the consultant must "not represent an interest of its own, or the interest of any other client, when it advises the agency that hires it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 11 (2001). The consultant's "only obligations are to truth and its sense of what good judgment calls for, and in those respects the consultant functions just as an employee would be expected to do." *Id.* Furthermore, when an outside group communicates its views to an agency that are "necessarily adverse to the interests of competitors," the outside group does not act in a consulting capacity. *Citizens for Responsibility & Ethics in Washington v. U.S. Dept. of Homeland Sec.*, 514 F. Supp. 2d 36, 44 (D.D.C. 2007), *citing Klamath Water Users,* 532 U.S. at 15.

The agency acknowledges that in *Klamath Water Users* the Supreme Court held that the tribes were not "consultants" for the purposes of this exemption, because they were communicating with the Bureau "with their own, albeit entirely legitimate, interests in mind,"

5

they were "self-advocates at the expense of others seeking benefits inadequate to satisfy everyone." *Klamath Water Users,* 532 U.S. at 12. However, the agency misapplies the *Klamath* standard, contending that Rapiscan and Northeastern University were "consultants" and ought to be included under Exemption 5. In order to argue this, the agency makes a misleading statement of fact, claiming that Rapiscan and NEU were communicating with DHS "so as to allow DHS officials to make informed decisions on how to best develop a viable system." Def. Reply at 4. This implies that it was DHS that was developing the system, which is false. Rapiscan and NEU were granted a contract to develop mobile body scanner technology. Successful completion of this contract could result in further contracts for deployment of mobile body scanner technology. If, indeed, Rapiscan and NEU were independent advisors assisting the agency evaluate an agency program, it would be similar to other cases in which entities were considered "independent consultants." In these cases, outside consultants were hired to neutrally audit existing government programs. *See Info. Network For Responsible Mining (Inform) v. Dep't of Energy*, CIV. 06-CV-02271-REB, 2008 WL 762248 (D. Colo. Mar. 18, 2008), *Citizens for Responsibility & Ethics in Washington*, 514 F. Supp. 2d 36, *Sakamoto v. U.S. Envtl. Prot. Agency*, 443 F. Supp. 2d 1182 (N.D. Cal. 2006), *Citizens Progressive Alliance v. U.S. Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1355 (D.N.M. 2002). But that is not the case here. Rapiscan and NEU were in the midst of developing and marketing a product to the agency, hoping to be granted further lucrative contracts for actual rollout of this product.

The agency argues that Rapiscan and NEU were not interacting in an adversarial context because these conversations took place after the initial contracts were awarded. But this is inaccurate. Both companies were in the middle of a larger, multi-stage procurement process. Both were seeking to prove the value of their own products to the agency so they could be

awarded contracts for the actual rollout of this technology. No contract for further deployment had been granted at the time that these communications were exchanged. Rapiscan and NEU were still engaged in an adversarial process, as "self-advocate[s] at the expense of other seeking benefits inadequate to satisfy everyone." *Klamath* at 12; Def. Reply at 3. Thus, EPIC's comparison to *Physicians Committee for Responsible Medicine v. National Institutes of Health*, 326 F. Supp. 2d 19, 28 (D.D.C. 2004), is apt. Like the grant applicant in that case, Rapiscan and NEU are engaged in a competitive process to obtain government funds.

The agency contends, "it is hard to conceive of any consultants hired by a federal agency who do not engage in ongoing business development efforts, if they want to remain in business." But what is at issue here is an active competition, not some outside or passive business development efforts. Rapiscan and NEU were, by their own admission, See Def.'s Motion for Summ. Judg. at 13-16, Modica Dec. ¶ 13, in the midst of a highly competitive process, hoping to obtain further lucrative contracts.

The agency is proposing that the terms "independent consultant" and "government contractor" have the same meaning and that government contractors be granted the same protection under Exemption 5 as are independent consultants, which is contrary to the purpose of the exemption. The agency cites no law to support its interpretation of the Exemption 5 as applied to  government contractors. *Independent consultants are a very select subset of government contractors*: in order to qualify for Exemption 5 protection, an independent consultant must "not represent an interest of its own, or the interest of any other client" when advising the agency. They must not be self-interested advocates. They must operate, essentially, as employees of the agency would, with only the agency's interest in mind. Rapiscan and NEU

do not meet the requirements for "independent consultant," and, therefore, their communications are not "intra-agency or inter-agency communications" for the purposes of Exemption 5.

B.  *The Documents Do Not Qualify for the Deliberative Process Privilege, Because They Contain Factual Information, Not Opinions, Recommendations, or Deliberations*

As previously set out in EPIC's Motion for Summary Judgment, even if the Court finds that the agency has satisfied the first prong of the Exemption 5 test, the agency has still failed to satisfy the second prong: the record "must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath Water Users*, 532 U.S. at 8. The agency has withheld emails, meeting minutes, and briefing materials (Vaughn Index Documents #5, 8, and 17), wrongly claiming that they are protected under the deliberative process privilege.

Courts routinely draw a distinction between factual material, which must be disclosed, and material embodying officials' opinions, which may be withheld. *Petroleum Info. Corp. v. U.S. Dept. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992), *citing EPA v. Mink,* 410 U.S. 73, 87-91 (1972). (endorsing the fact/opinion distinction); *Quarles v. Department of Navy,* 893 F.2d 390, 392 (D.C.Cir.1990) (observing that "the prospect of disclosure is less likely to make an adviser omit or fudge raw facts, while it is quite likely to have just such an effect" on materials reflecting agency deliberations). "Purely factual reports and scientific studies cannot be cloaked in secrecy by an exemption designed to protect only 'those internal working papers in which opinions are expressed and policies formulated and recommended.'" *Bristol-Myers Company v. FTC,* 424 F.2d 935, 939 (D.C.Cir. 1970), *quoting Ackerly v. Ley,* 420 F.2d 1336, 1341 (D.C.Cir.1969).

Defendants assert that the fact/opinion distinction is essentially meaningless, but, in doing so, only cite a non-binding Ninth Circuit opinion and one D.C. Circuit opinion that simply

cautions against "reflexive" characterization. Despite the agency's arguments to the contrary, the Supreme Court has recognized that "Virtually all of the courts that have thus far applied Exemption 5 have recognized that it requires different treatment for materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *EPA v. Mink*, 410 U.S. at 89. The D.C. Circuit follows the fact / opinion distinction, *Playboy Enterprises, Inc. v. Dep't of Justice*, 677 F.2d 931, 936 (D.C.Cir. 1982) (finding that the factual material in a government report was not protected under the deliberative process privilege and must be released); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 858 (D.C. Cir. 1980) (holding that memoranda from regional counsel issued in response to requests for interpretations of regulations were not exempt under the deliberative process privilege because they were "straightforward explanations of agency regulations"), and District of Columbia courts have routinely held that factual materials are not protected from disclosure under Exemption 5. *See, e.g., Judicial Watch, Inc. v. U.S. Dept. of Treasury*, CIV.A. 09-01508 BAH, 2011 WL 2678930 (D.D.C. July 11, 2011) (holding that headers at the top of several sets of minutes were factual and, hence, segregable and must be released); *CREW v. DHS,* 648 F. Supp. 2d 152 (D.D.C. 2009)(holding that documents consisting of "factual information" must be disclosed because they were "quite plainly, not recommendations, drafts, proposals, suggestions or the like, reflecting 'the personal opinions of the writer,' nor do they reveal the 'give-and-take of the consultative process' and stating that "It is well-established that the deliberative process privilege generally does not shield purely factual information from disclosure").

The agency's own description of the withheld documents indicates that they are clearly factual, not "advisory opinions, recommendations, and deliberations that are part of a process by which governmental decisions and policies are formulated." *Klamath Water Users,* 532 U.S. at 8.

9

The withheld documents include factual information about different sorts of test methodology, technology, system design, deployment scenarios, types of software and the strengths and weaknesses of the prototype system. Contrast this with the typical sorts of communications or documents that are correctly withheld under Exemption 5, such as "legal opinions prepared for the Secretaries of State," *Brinton v. Dep't of State*, 636 F.2d 600, 604 (D.C. Cir. 1980), "the personal opinions of the writer," *CREW* 648 F. Supp. 2d at 159, "recommendations regarding the formulation of the agency's substantive response." *Id.*

The agency argues that revealing these factual documents would reveal the agency's decision-making process, but that is not accurate. The Vaughn Index characterizes the documents as follows: an email from Northeastern representative John Beaty that "outlines and attaches options related to potential test methodology and technology choices to be made, as well as the progression to develop concepts of operation for equipment…," Vaughn Index Document #5, meeting minutes describing "options presented to DHS for moving forward with Phase II of system design, a variety of possible deployment scenarios, and the type of software that may need to be developed to effectively manage the system," Vaughn Index Document #8; Def.'s Motion for Summ. Judg. at 21, and materials regarding "strengths and weaknesses of the prototype system." Vaughn Index Document #17. These documents, which were largely produced by third party contractors, don't set forth "DHS's deliberations," as the agency has claimed in its Reply. Def. Reply at 7. They set forth factual information, mostly provided by third party entities, regarding the body scanner systems.

The agency is asserting that purely factual information authored by third party entities should be protected under Exemption 5. This would be a radical expansion of Exemption 5, and

would be directly contrary to FOIA's intended narrow interpretation of exemptions. *EPA v. Mink*, 410 U.S. at 89.

C. *Even if the Court Finds that Portions of the Documents Are Protected Under the Deliberative Process Privilege, the Unprotected Factual Portions Are Segregable and Should Be Released*

Even if the Court finds that some sections of the records are properly withheld under Exemption 5, all segregable portions must still be released. 5 U.S.C. § 552(b); *Oglesby v. U.S. Dept. of Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). "Wnen {sic} an intra-agency memorandum consisted of purely factual material, or such factual portions were easily severable from the deliberative portions, disclosure would be required."
*Montrose Chem. Corp. of California v. Train*, 491 F.2d 63, 66 (D.C. Cir. 1974). The agency has not challenged the necessity of releasing all segregable documents.

### III. The Agency has Wrongly Withheld Information Under Exemption 4

The Defendant has wrongly withheld information under Exemption 4, which permits an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). In order to qualify for this exemption, the information must meet all three requirements set out in the provision. The agency wrongly claims that EPIC did not properly challenge withholdings under this exemption, Def. Reply at 8 ("EPIC takes issue with the first ground, but ignores the second"). EPIC quite clearly challenged this withholding, stating "This public availability negates the argument that disclosure would harm Rapiscan or impair the government's ability to obtain necessary information in the future." Pl.'s Motion for Summ. Judg. at 15.

In its Motion for Summary Judgment, EPIC described several classes of information that were clearly not "confidential" under the meaning of Exemption 4 because they had already been publicly released by Rapiscan. The agency now disputes this, saying that these publicly released documents "do not contain the same type of information withheld here," Def. Reply at 9. But this is false – as EPIC has shown in its Motion for Summary Judgment, these documents contain much of the same information being withheld under the guise of "confidentiality." In the Vaughn Index, the agency claims the information withheld under Exemption 4 contains scan time (Vaughn Index Items #6-10, 12), inspection time (Vaughn Index Items #6-10, 12), design schematics (Vaughn Index Item #9, 10), detection abilities (Def.'s Motion for Summ. Judg. at 15), and images of how the system would identify threats (Vaughn Index Item #9 "unit pricing" information, Vaughn Index Item #8, 15; Def.'s Motion for Summ. Judg. at 15, and frequency requirements (Vaughn Index Items #6-10). EPIC has shown that these classes of information are already publicly available. Pl.'s Motion for Summ. Judg. at 15-17. Hence, their disclosure now cannot possibly harm Rapiscan's competitive interests or the government's ability to obtain necessary information in the future. *CNA Fin. Corp. v. Donovan*, 830 F.2d 1132, 1154 (D.C. Cir. 1987) (finding that "To the extent that any data requested under FOIA are in the public domain, the submitter is unable to make any claim to confidentiality-a *sine qua non* of Exemption 4").

As in the case of Exemption 5, the agency has not challenged the fact that all segregable documents must be released.

## IV. EPIC Is Entitled to Recover Its Costs and Fees

In its Motion for Summary Judgment, EPIC correctly asserted that it is both eligible and entitled to fees under FOIA. The court may assess against the United States reasonable attorney

fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." 5 U.S.C. § 552(a)(4)(E).

In order to be eligible, EPIC must have substantially prevailed in its lawsuit. *Id.* "A complainant has substantially prevailed if the complainant has obtained relief through … a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id*. Defendant claims that EPIC has not satisfied this requirement, despite the forced disclosure of "four NEU records withheld under Exemption 4." Def. Reply at 10. The disclosed documents DHS references were 151 pages of previously unreleased documents, released, at the agency's own admission, in response to the lawsuit, stating "In an effort to narrow the issues for judicial review, DHS, subsequent to the filing of this action, has further reviewed the records to determine whether any additional non-exempt information could be reasonably segregated." Def. Motion for Summ. Judg. at 5. "The institution and prosecution" of this suit plainly "cause[d] the agency to release the documents obtained during the pendency of the litigation." *Church of Scientology v. Harris*, 653 F.2d 584, 587 (D.C. Cir. 1981). DHS tries to assert that EPIC didn't substantially prevail here because "Nothing in the record or EPIC's assertions suggest that these latter records have provided an vital information to the public." This is not a question that is relevant to the eligibility inquiry, and perhaps isn't even really relevant to the entitlement inquiry discussed below. Either way, however, as EPIC indicated in its Motion for Summary Judgment, these records were promptly posted on its website, www.epic.org, which is one of the most popular privacy websites in the world. DHS next tries to characterize 151 pages of records as "a small amount of information." Def. Reply at 10. This is disingenuous and inaccurate. Clearly, though, EPIC has already substantially prevailed by forcing the agency,

through litigation, to disclose a substantial amount - 151 pages - of previously unreleased documents.

In order to determine whether or not EPIC is entitled to fees, "The court should consider [four factors] in determining the appropriateness of an award of costs and attorney fees." *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1365 (D.C. Cir. 1977). The four factors are: 1) "the benefit to the public, if any, deriving from the case;" 2) "the commercial benefit of the complainant;" 3) "the nature of [the complainant's] interest in the records sought"; and 4) "whether the government's withholding of the records sought had a reasonable basis in law." H. Comm. on Gov't Operations and S. Comm. on the Judiciary, 94th Cong., *Freedom of Information Act and Amendments of 1974 (Pub. L. No. 93-502) Source Book,* 189-90 (J. Comm. Print 1975). DHS argues in its Reply that "EPIC has not demonstrated any benefit accruing to the public as a result of DHS's post-filing release of records." Def. Reply at 11. This is false. As EPIC asserted in its Motion for Summary Judgment:

> EPIC's FOIA suit provided substantial benefit to the public. EPIC maintains two of the most popular websites in the world - www.epic.org and www.privacy.org - for searches on the term "privacy." EPIC disseminated the agency records it received on its www.epic.org web site[1] and to the approximately 8,000 recipients of its bi-weekly newsletter.[2]"

DHS next asserts that its withholding of documents was reasonable. However, the agency's post-filing disclosure of documents would suggest otherwise. In reconsidering its previous withholding of these documents, even the agency apparently decided that the withholding was inappropriate. The agency now tries to assert that it had "reasonably" withheld these 151 pages of documents in order to consult NEU, Def. Reply at 12, but this is not an explanation for withholding that it has ever asserted in any of its previous filings in this case. In

---

[1] http://epic.org/2011/08/documents-reveal-new-details-a.html
[2] http://epic.org/alert/epic_alert_1818.html

fact, its previous filings suggest that this explanation is false. The documents were not disclosed later because the agency was awaiting approval from NEU. They were released after the agency had re-reviewed its records "In an effort to narrow the issues for judicial review, DHS, subsequent to the filing of this action, has further reviewed the records to determine whether any additional non-exempt information could be reasonably segregated." Def. Motion for Summ. Judg. at 5, *see also* Medina Decl., ¶ 25.

Lastly, the agency tries to suggest that in order to be entitled to fees, EPIC must prove that DHS acted "obdurately or in bad faith." FOIA imposes no such requirement on EPIC. An agency's failure to produce documents in compliance with FOIA need not be an act of bad faith in order to be unreasonable. In fact, even failures caused by agency inefficiency and backlogs have been found to be "unreasonable."

> The Department has explained that these documents were not produced more quickly because of a combination of factors, including processing backlogs, confusion, and administrative error. While these reasons are plausible, and we do not find them to be evidence of bad faith on the part of the Department, they are practical explanations, not reasonable legal bases. The FOIA does not contain a statutory exception for administrative inefficiency.

*Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1390 (8th Cir. 1985)

EPIC has shown that it is both eligible and entitled to fees. EPIC was forced to sue the DHS in order to make the agency disclose to the public critical information concerning the DHS' mobile body scanner program. The DHS had no reason or legal basis to withhold these records. The agency must reimburse EPIC for its costs and fees.

## **CONCLUSION**

For the reasons stated herein and in the Plaintiffs Motion for Summary Judgment, the Court should grant summary judgment in Plaintiff's favor.

15

                    Respectfully submitted,

                    _____*/s/ Ginger McCall*_____
                    MARC ROTENBERG
                    JOHN VERDI
                    GINGER MCCALL
                    Electronic Privacy Information Center
                    1718 Connecticut Ave. NW, Suite 200
                    Washington, DC 20009
                    (202) 483-1140
                    *Counsel for Plaintiff*

Dated: October 20, 2011

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 20[nd] day of October 2011, I served the foregoing PLAINTIFF'S REPLY IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT, by electronic case filing upon:

    JAVIER M. GUZMAN
    Assistant United States Attorney
    U.S. Department of Justice

                                                */s/ Ginger McCall*
                                                Ginger McCall
                                                *Counsel for Plaintiff*